No. 13,868.

Irvin et al. *v.* Blair.
(68 P. [2d] 28)

Decided April 26, 1937.

Mr. W. A. ALEXANDER, Mr. CECIL M. DRAPER, Mr. TEL-LER AMMONS, Mr. JOHN F. MUELLER, for plaintiffs in error.

Mr. J. E. LITTLE, Mr. O. E. COLLINS, for defendant in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THIS case arose out of an automobile collision. Judgment was entered in the district court on a $1,000 jury verdict for damages in favor of the injured plaintiff, Grace Blair, and against the defendants, C. C. Irvin, Carl Irvin and Carl G. Spangler. The defendants claim reversible errors.

The accident occurred a few miles south of Larkspur on the paved road between Denver and Colorado Springs. A Chevrolet coach and a Chevrolet truck collided. Miss Blair was a passenger in the Chevrolet coach, which belonged to Herbert Blair, her father, who was driving it southward. Carl Irvin and Spangler were the only persons riding on the Chevrolet truck, the property of the absent defendant, C. C. Irvin, which Spangler was driving on the same highway in the direction opposite to that in which the Blair car was traveling. The

uncontradicted evidence of the defendants was to. the effect that this absent defendant was merely a bailor, and that the other two defendants were in possession as mere bailees, of the car, and that at the time of the collision and during the entire trip these two defendants were on business of their own, entirely separate and apart from that of C. C. Irvin. To charge the latter with liability for personal injuries resulting when the two vehicles met, it was incumbent on the plaintiff, even if negligence were proved against Spangler, to prove further that Spangler was at the time acting as C. C. Irvin's agent or employee. See *Otoupalik v. Phelps*, 73 Colo. 433, 216 Pac. 541; Huddy, Law of Automobiles (9th Ed.), volume 7-8, p. 225, §85.

Many alleged errors of the trial court are assigned, but only a few of them raise contentions that need be discussed.

1. It is contended that the court ought not to have excluded certain evidence offered by C. C. Irvin for the purpose of explaining and contradicting what is claimed to be an admission of Spangler's relation to him as employee and agent for and during the particular trip. The alleged admission is found in a complaint which was filed in another case, brought by Irvin against Grace Blair's father to recover damages for the injury inflicted by the collision upon the Chevrolet truck. The document was of course properly admitted as tending to prove any admission contained therein. The excluded testimony would have tended to establish that Irvin had no knowledge of the alleged admission, and that his attorney had prepared, sworn to, and filed the complaint without submitting it to Irvin. The latter had a right to show, if he could, that he was ignorant of the language in question, and so to overcome its apparent effect if possible. The court, however, mistakenly took the contrary view, as shown by its stating to defendants' counsel in the presence and hearing of the jury: "He can't repudiate it after he has ratified. * * * If you will look it up you

352

will find he is bound by the statements of his attorney." It was clearly not a question whether the defendant, as client in an entirely different case to which the plaintiff was not a party, was bound by what his attorney did or said; the question was whether or not certain specific knowledge had come to the mind of one of the defendants. Not to admit the evidence offered was prejudicial error, and on this ground the case would have to be reversed as to this particular defendant; and, since the case was tried as a whole against all three defendants, complete justice calls for a reversal as to all.

2. In his argument to the jury, one of the attorneys for the plaintiff, referring to C. C. Irvin's alleged admission that Spangler sustained to him the relation of agent—contained in the above-mentioned complaint upon which the independent case of C. C. Irvin against the plaintiff's father was based—said:

"This complaint was filed two weeks after the accident, when everything was fresh in the mind of Mr. C. C. Irvin, and he alleges:

" 'That * * * the plaintiff [was] then * * * owner of a Chevrolet * * * truck * * * being driven and operated in his behalf by C. G. Spangler * * *' and now he comes in and says he had nothing to do with it. Why? In this suit he was attempting to recover for damages to his truck from Mr. Blair. In this suit we are now trying Miss Grace Blair is attempting to recover from Mr. C. C. Irvin for her injuries. When C. C. Irvin was trying to recover damages from Mr. Blair Mr. Spangler was his employee because he had to be in order to recover."

It was not a correct statement of the law and it manifestly tended to prejudice this defendant in the eyes of the jury. Nevertheless, the court overruled counsel's objections and denied counsel's request to instruct the jury to disregard the statement. These rulings also constituted prejudicial error and are ground for reversal.

3. Error is assigned in connection with evidence concerning a conversation had in Colorado Springs two days after the accident. The plaintiff's father testified

that the defendant C. C. Irvin then and there stated to him that the Irvin car was "covered,—it was protected." This obviously referred to the question of automobile insurance and was clearly inadmissible and prejudicial. However, the record shows that the trial court properly so ruled.

4. Error is also assigned on the admission in evidence of plaintiff's exhibit A. The majority of the justices think that the objections to this exhibit are not sufficient to require us to rule thereon. Mr. Justice Hilliard and Mr. Justice Holland, however, join the writer of the present opinion in the views hereinafter stated, leading to the conclusion that it was reversbile error to admit the exhibit. This is an elaborate diagram naturally giving the impression that it was drawn to scale. It represented not only the place of the accident, with what purports to be the exact width of the paved road and of the shoulders, and, in artistic detail, the two alleged motor vehicles superimposed thereon and in relation thereto at the moment of the impact, but also undertook to show the positions and courses before and after the collision. It was not an actual picture taken at the scene of the accident; nor was it a mere diagram of the locus in quo, for use in direct connection with and by way of immediate explanation of the oral testimony. Indeed, plaintiff's father testified: "I had [the diagram] made by an artist in Colorado Springs. He outlined this and I worked with him when he made it." It plainly undertook to tell or, rather, re-tell the story of the accident. It seems manifest that an artist's sketch so prepared from information privately given outside the courtroom has no more authenticity as evidence than would attach to a deliberately prepared written narrative similarly made in advance and out of court by a scribe not appearing at the trial to identify it. To admit such a narrative or such a diagram, either as independent or as duplicating evidence, after a witness who has not himself prepared it is asked whether it is correct and answers in the affirmative, and after such witness has told his entire story

without using the diagram for illustration while telling it, would let down the bars for the grossest violations of the salutary principle which prohibits leading questions. It would, moreover, enable a party to circumvent entirely the recognized rules against hearsay evidence and against repetition of a witness's testimony.

The law in relation to such documents is well stated in 10 R. C. L., page 1153, section 356 as follows: "It is a well-established rule, applied in every-day practice in courts, that diagrams and maps illustrating the scenes of a transaction, and the relative location of objects, if proved to be correct, are admissible in evidence, in order to enable the court or jury to understand and apply the established facts to the particular case." Here the plaintiff clearly failed to comply with the requirement that such documents must be shown to be accurate before they are admitted in evidence in connection with the testimony.

A careful inspection of exhibit A proves it to be astonishingly inaccurate, to an extent hopelessly misleading. In fact, the very purpose for which it was apparently offered is defeated. So far from clarifying the oral evidence, it tends to confuse it. Four witnesses had testified since the plaintiff's father, after fully recounting his story, had left the witness stand. Then he was recalled solely for the purpose of identifying and verifying the exhibit. Even such a virtual retracing of the witness's oral testimony, independently of the latter and as a separate pictorial repetition of it, would perhaps not in itself have been prejudicial, did it not contain glaring inaccuracies which, because hidden, are the more dangerously deceptive. Each half of the paved highway, for instance, is labeled as nine feet wide, which is the actual width. But, instead of following the scale applied to the width of the dirt shoulders labeled as four feet wide each, the pavement has shrunk to a scant twelve-foot total width, making the center line only 6 feet from the respective shoulders. So, too, the cross indicating the point where the truck turned over in the ditch, is shown on the

diagram to be less than 15 feet from the supposed position at the time of collision, though the witness testified that this distance was 60 feet. Moreover, the lines representing the courses taken by the two vehicles to the common point of impact are themselves a direct contradiction of all the oral testimony. If another trial is had, exhibit A should not be admitted in evidence. This is said with full recognition of the value of maps, diagrams and other pictures which meet the test of reasonable accuracy and are used in direct connection with oral evidence by way of proper explanation under well recognized rules.

For the reasons assigned under subdivisions 1 and 2 above, judgment must be reversed and the case remanded for a new trial.

Judgment reversed.